STEVEN S. KARIC, SBN 121777
 *skaric@hkemlaw.com*
HAMBURG, KARIC, EDWARD & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409
Telephone: (310) 552-9292
Facsimile:  (310) 552-9291

Attorneys for Defendant
SEXUAL MD SOLUTIONS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NOVUS ANTI-AGING CENTER, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEXUAL MD SOLUTIONS, LLC,<br><br>Defendant. | CASE NO. 2:20-cv-03152-SVW-GJS<br><br>[HONORABLE STEPHEN V. WILSON]<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT SEXUAL MD SOLUTIONS, LLC TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF STEVEN S. KARIC**<br><br>DATE:        JUNE 22, 2020<br>TIME:         1:30 PM<br>CTRM:        10A |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on JUNE 22, 2020 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10A of the above-entitled Court, located at 350 West First Street, 10th Floor, Los Angeles, California 90012, defendant Sexual MD Solutions, LLC. (Defendant or SMDS) will and hereby does move, pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss without leave

to amend the Complaint of plaintiff Novus Anti-Aging Center, Inc. (Plaintiff or Novus) on the following grounds:

First, SMDS moves to dismiss the Complaint pursuant to Rule 12(b)(7) on the grounds that it fails to name a necessary and indispensable party.

Second, SMDS moves to dismiss the Complaint pursuant to Rule 12(b)(6) on the grounds that it fails allege causation and damages and thus fails to establish anti-trust standing or to state a claim upon which relief can be granted as a matter of law.

Third, SMDS moves to dismiss the Complaint pursuant this Court's inherent authority under the "first-to-file" rule because it substantially overlaps with an action between the parties that is currently pending in the United States District Court for the Southern District of Florida.

PLEASE TAKE FURTHER NOTICE that, in the alternative, SMDS will and hereby also does move, pursuant to this Court's inherent authority under the "first-to-file" rule and 28 U.S.C. § 1404, to transfer the above-entitled action to the United States District Court for the Southern District of Florida on the grounds that it substantially overlaps with an action between the parties that is currently pending in the United States District Court for the Southern District of Florida:

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the attached Declaration of Steven S. Karic, the concurrently filed Request for Judicial Notice and accompanying exhibits, the complete file and records of the Court in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

This Motion is made following the conference of counsel pursuant to L.R 7-3 which took place on May 22, 2020, which did not take place at least seven days before

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*
NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AUTHORITIES; KARIC DEC.

the filing of this Motion for the reasons more particularly described in the attached Declaration of Steven S. Karic.

DATED:  MAY 22, 2020          HAMBURG, KARIC, EDWARDS & MARTIN LLP

By   //s// Steven S. Karic
       STEVEN S. KARIC

Attorneys for Defendant
SEXUAL MD SOLUTIONS, LLC

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

3

1
2
# TABLE OF CONTENTS
3
MEMORANDUM OF POINTS AND AUTHORITIES ..........................................8

I.      INTRODUCTION ...................................................................................8

II.     FACTUAL ALLEGATIONS ..................................................................8

        A.      The Relevant Written Agreements.........................................9

                1.      The Membership Agreement Establishing the Business
                        Relationship Between Novus and SMDS ..................9

                2.      The Settlement Agreement Reflecting the Alleged
                        Anti-Trust Conspiracy Between SMDS and TRT ...................10

        B.      The Relevant Pending Federal Lawsuits..............................11

        1.      The Alleged Co-Conspirators (SMDS and TRT) Are
                Litigation Opponents in a Georgia Action.........................11

        2.      The Named Parties (Novus and SMDS) Are Litigating the
                Same Issues in a First-Filed Florida Action.........................12

III.    THE MOTION TO DISMISS SHOULD BE GRANTED..........................13

        A.      Dismissal Is Required Because Novus Failed to Name a
                Necessary and Indispensable Party.....................................14

        B.      Dismissal is Required Because Novus Failed to Allege

                Any Damages ........................................................................17

        C.      Dismissal (or at Least a Transfer) Is Required Because this
                Action Substantially Overlaps with the First-Filed Florida
                Action ...................................................................................19

IV.     CONCLUSION....................................................................................24

DECLARATION OF STEVEN S. KARIC ............................................................26

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**CASES**

*Banxcorp v. Apax Partners,*
*L.P.*, 2011 WL 1253892, at *7 (D.N.J. Mar. 28, 2011) ........................................ 11

*Barzrganian v. Mercedes-Benz USA, LLC*,
2017 WL 4990517, at *3 (C.D. Cal. Oct. 31, 2017) ............................................ 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) ...................................................................................... 12

*Cargill, Inc. v. Monfort of Colorado Inc.*,
479 U.S. 104, 110 n.5 (1986) ................................................................................ 11

*CE Distribution, LLC v. New Sensor Corp.*,
380 F.3d 1107, 1113 (9th Cir. 2004) .................................................................... 17

*Coastal Comms. Serv., Inc. v. City of N.Y.*,
658 F. Supp. 2d 425, 451 (E.D.N.Y. 2009) ............................................................ 8

*Cunningham v. Gates*,
229 F.3d 1271, 1292 (9th Cir. 2000) .................................................................... 11

*Daimler AG v. Bauman*,
571 U.S. 117, 137 (2014) ...................................................................................... 16

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
276 F.3d 1150, 1157 (9th Cir. 2002) ...................................................................... 8

*Embroidery Corp. v. Atlantic Embroidery, Inc.*,
368 F.3d 1174, 1178 (9th Cir. 2004) .............................................................. 16, 17

*Engineered Framing Sys., Inc. v. Vescom Structures, Inc.*,
2005 WL 8174971, at *5 (D. N.J. Nov. 1, 2005) ................................................. 12

*Feitelson v. Google, Inc.*,
80 F. Supp. 3d 1019, 1027 (N.D. Cal. 2015) ........................................................ 12

*Gerin v. Aegon USA, Inc.*,
2007 WL 1033472, at *4 (N.D. Cal. 2007) .......................................................... 14

*Gloub v. Gigamon Inc.*,
372 F. Supp. 3d 1033, 1043 (N.D. Cal. 2019) ........................................................ 2

*Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015, 1024 (9th Cir. 2002) ................................................................... 8, 9

*Hatch v. Reliance Ins. Co.*,
758 F.2d 409, 414 (9th Cir. 1985) ........................................................................ 16

*Hoffman v. Blaski*,
363 U.S. 335, 344 (1960) ...................................................................................... 16

*In re Apple iPhone Antitrust Litig.*,
   874 F. Supp. 2d 889, 899 (N.D. Cal. 2012)..................................................................8

*Inherent.com v. Martindale-Hubbell*,
   420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)..........................................................14

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495, 498-499 (9th Cir. 2000)......................................................................17

*Jones v. Micron Tech. Inc.*,
   400 F. Supp. 3d 897, 911 (N.D. Cal. 2019)..............................................................11

*Kennedy v. Full Tilt Poker*,
   2012 WL 13071634, at *9 (C.D. Cal. Aug. 24, 2012) ..........................................14

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
   787 F.3d 1237, 1240 (9th Cir. 2015) ..................................................................13, 14

*Levin v. Commerce Energy, Inc.*,
   560 U.S. 413 (2010)..........................................................................................................8

*MeridianLink, Inc. v. DH Holdings, LLC*, 2010 WL 11512182, at *2 (C.D. Cal. June
   16, 2010) ............................................................................................................................12

*MeridianLink, Inc. v. DH Holdings, LLC*,
   2010 WL 11512182, at *3 (C.D. Cal. June 16, 2010) ............................................14

*Nakash v. Marciano*,
   882 F.2d 1411, 1416 (9th Cir. 1989) ..........................................................................14

*Pac. Coast Breaker, Inc. v. Conn. Electric, Inc.*,
   2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) ..............................................13

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93, 94-95 (9th Cir 1982)................................................................................12

*Ponomarenko v. Shapiro*,
   287 F. Supp. 3d 816, 834 (N.D. Cal. 2018)..............................................................16

*Rolls-Royce Corp. v. Heros, Inc.*,
   576 F. Supp. 2d 765, 784 (N.D. Tex. 2008) ............................................................17

*Schwartz v. Frito-Lay N. Am.*,
   2012 WL 8147135, at *3 (N.D. Cal. Sept. 12, 2012)............................................14

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22, 29-30 (1988). ...........................................................................................17

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
   967 F. Supp. 2d 1289, 1295 (N.D. Cal. 2013)..........................................................13

*Wilbur v. Locke*,
   423 F.3d 1101, 1111-1114 (9th Cir. 2005)..................................................................8

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AUTHORITIES; KARIC DEC.

## STATUTES

Fed. R. Civ. P. 12 .................................................................................. 10

Fed. R. Civ. P. 19 ............................................................................... 8, 9

Fed. R. Evid. 201 ................................................................................... 2

Fla. Stat. § 48.193 ............................................................................... 16

28 U.S.C. § 1391 ................................................................................. 16

28 U.S.C. § 1404 ................................................................................. 16

15 U.S.C. § 22 ..................................................................................... 16

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AUTHORITIES; KARIC DEC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Novus Anti-Aging Center, LLC (Novus) is the primary defendant in a lawsuit that is currently pending in the United States District Court for the Southern District of Florida, which was initiated by Defendant Sexual MD Solutions, LLC (SMDS), and arises from the same agreement that is the subject of this action. Given that the Florida court recently issued a preliminary injunction against Novus, based on its finding that SMDS is substantially likely to prevail in the litigation, Novus is desperate to distract from the issues and retaliate against SMDS. Accordingly, Novus filed this putative class-action complaint asserting anti-trust conspiracy claims in this court on the other side of the country. As explained in more detail below, dismissal is appropriate because Novus's complaint omits a necessary and indispensable alleged co-conspirator; forecloses the existence of any anti-trust damages as a matter of law; and asserts claims that are properly dismissed (or transferred) in favor of the first-filed action involving the same parties and subject matter.

## II.    FACTUAL ALLEGATIONS[1]

Novus is a medical office that provides extracorporeal shockwave therapy (ESWT) as a treatment for erectile dysfunction. SDMS is a business that provides training, marketing, and promotional support for medical providers specializing in ESWT treatment for erectile dysfunction, including Novus. The gravamen of Novus's complaint is that SMDS supposedly joined an anti-competitive conspiratorial scheme with a nonparty to this litigation in September 2018, which in turn supposedly caused SMDS to charge Novus "supracompetitive prices" for the services it provides. [Doc. No. 1 at ¶ 40].

---

[1] SMDS assumes the truth of the facts alleged in Novus's complaint only for purposes of this motion to dismiss and reserves the right to contest those facts at the appropriate time. References to Exhibit Nos. 1-5 herein correspond to the exhibits attached to SMDS's Request for Judicial Notice, filed on this date.

*PRINTED ON RECYCLED PAPER*
NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

There are, however, several gaping holes in Novus's theory of the case that it attempts to obscure by withholding basic information from the Court, such as the effective dates of relevant contracts. But those facts and dates can be established by reference to court filings and other records "whose accuracy cannot reasonably be questioned," and thus Novus cannot prevent the Court from considering them in connection with this motion to dismiss. Fed. R. Evid. 201(b)(2); *Gloub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1043 (N.D. Cal. 2019) ("Documents alleged in a complaint and essential to a plaintiff's allegations may be judicially noticed," as well as "documents on which allegations in the complaint necessarily rely, even if not expressly referenced in the complaint"). Accordingly, the following summary of relevant facts includes the allegations in Novus's complaint, as well as the underlying undisputed facts gleaned from the two written agreements and two pending lawsuits that encompass the subject matter of this lawsuit.

### A. The Relevant Written Agreements

This lawsuit concerns the interplay between the business relationship of Novus and SMDS, as memorialized in their Membership Agreement, on the one hand; and the alleged anti-trust conspiracy of SMDS and TRT, as memorialized in their Settlement Agreement, on the other hand.

### 1. The Membership Agreement Establishing the Business Relationship Between Novus and SMDS

SMDS provides "market[ing], promot[ional], and . . . licens[ing]" services to help medical providers market and sell their ESWT treatments for erectile dysfunction to the public. [Doc. No. 1 at ¶ 27].

On October 5, 2017, Novus's President, Dustin Wolff, signed SMDS's standard Membership Agreement, providing Novus access to SMDS's proprietary "business in a box" training and promotional program. The first section of the Membership Agreement sets forth its straightforward pricing model:

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

"[Novus] agrees to pay SMDS monthly membership dues of nine hundred and ninety-five dollars ($995) (the "Membership Dues") for licensing and marketing including services described on Exhibit A to this agreement. These Membership Dues are initially prorated from the date of training through the end of the calendar month in which training occurred."

[*See* SMDS' Request for Judicial Notice (RJN) Ex. 1 at ¶ 1].

In exchange for its $995 monthly membership dues, Novus was provided access and permission "to use the GAINSWave trademark"; "to use SMDS's proprietary treatment protocols"; "to use [SMDS's] marketing materials"; to enjoy "the benefit of SMDS's general marketing of the GAINSWave brand"; and to receive a "listing in SMDS's GAINSWave provider directory." [Doc. No. 1 at ¶ 30].

Novus expressly acknowledged in writing that "SMDS invested substantially to develop[,] create[,]" and "establish the Intellectual Property and related goodwill and business relationships" that SMDS would provide under the Membership Agreement; that "the Business Information would be difficult and costly for [Novus] to learn, develop, and use independently," and "has substantial competitive value" which "SMDS has a legitimate business interest in protecting." [RJN, Ex. 1 at ¶ 6].

Following its execution of the Membership Agreement on October 5, 2017, the complaint does not allege that Novus was charged—or paid—any increased membership dues at any point during its business relationship with SMDS.

### 2. *The Settlement Agreement Reflecting the Alleged Anti-Trust Conspiracy Between SMDS and TRT*

The complaint alleges that, approximately a year after the Membership Agreement was signed, SMDS became the victim of a "ruse" perpetrated by TRT, [Doc. No. 1 at ¶ 66], resulting in a September 17, 2018 Settlement Agreement between SMDS and TRT that supposedly has an anticompetitive effect on the market for ESWT programs across the country. [Doc. No. 1 at ¶ 40].

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*
NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

The perpetrator of the alleged anti-trust scheme, Nonparty Tissue Regeneration Technologies, LLC (TRT), is the owner of an exclusive license to the so-called "'127 patent." Despite knowing that its patent "is not valid or enforceable against most existing ESWT treatments"—including the treatment protocol at issue in this case—TRT nevertheless "attempted to monetize" the patent by engaging in an extortion scheme that eventually ensnared SMDS. [Doc. No. 1 at ¶ 63].

SMDS was one of the entities victimized by TRT's "ruse," and found itself facing the "existential threat" of litigation "that it could not afford to lose." [Doc. No. 1 at ¶ 66]. Accordingly, SMDS "did not challenge [TRT's] patent," [*id.*], and instead was forced "to settle the litigation" under duress. [Doc. No. 1 at ¶ 40].

According to Novus's complaint, the Settlement Agreement between SMDS and TRT had the effect of "unlawfully restrict[ing] competition," [Doc. No. 1 at ¶ 40], causing Novus to pay "supracompetitive prices" for SMDS's marketing program. [Doc. No. 1 at ¶ 118]. However, Novus had already agreed to pay $995 per month for SMDS's program when it signed the Membership Agreement on October 5, 2017. The purportedly anticompetitive conspiracy between SMDS and TRT was not formed until the Settlement Agreement was signed on September 17, 2018, nearly a year later.

### B.   The Relevant Pending Federal Lawsuits

The parties, allegations, and claims in this lawsuit substantially overlap with the parties, allegations, and claims in the two other pending federal lawsuits described below:

#### 1.   The Alleged Co-Conspirators (SMDS and TRT) Are Litigation Opponents in a Georgia Action

While Novus acknowledges that SMDS, at least initially, was a victim of TRT's "ruse" to enforce its patent and an unwilling participant in any conspiracy, [Doc. No. 1 at ¶ 66], it alleges that SMDS eventually joined TRT's conspiratorial scheme by signing a Settlement Agreement. [Doc. No. 1 at ¶ 40]. Despite Novus's allegation that SMDS and TRT are co-conspirators, they actually have been litigation opponents

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*
NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

since October 2019 in a pending case, styled *Tissue Regeneration Techs., LLC, et al. v. The Anti-Aging Group, L.L.C., et al.*, No. 19-CV-04448 (N.D. Ga.) (the ***Georgia Action***).

    The Georgia Action reflects that, less than one week after the Settlement Agreement was signed, TRT admitted it had no intention of honoring its side of the agreement and simply stopped trying to perform, leading SMDS to terminate the agreement and to sue TRT. In the Georgia Action, each of the alleged co-conspirators has accused the other of breaching the Settlement Agreement. *See* [RJN, Ex. 2].

### 2.    The Named Parties (Novus and SMDS) Are Litigating the Same Issues in a First-Filed Florida Action

    This lawsuit arises from Novus's allegation that an anti-trust conspiracy between SMDS and TRT caused Novus to pay "supracompetitive prices" as set forth in the Membership Agreement between Novus and SMDS. Consequently, Novus requests that this Court "[e]njoin SMDS from continuing its unlawful acts," and "[d]eclare that all SMDS's contracts or agreements that violate the Sherman Act are void." [Doc. No. 1 at 24-25, ¶¶ 3-4]; *accord* [Doc. No. 1 at ¶¶ 42, 76, 123] (Novus alleging that the Membership Agreement is unlawful and causes the "threatened injuries" from which it seeks relief in this action).The business relationship between Novus and SMDS as reflected in the Membership Agreement is already the subject of active and ongoing litigation in a pending case, styled *Sexual MD Solutions, LLC v. Wolff et al.*, No. 20-CV-20824 (S.D. Fla.) (the ***Florida Action***).

    On May 6, 2020, the court in the first-filed Florida action entered a preliminary injunction against Novus, holding that SMDS was substantially likely to prevail on its claim that Novus "materially breached the restrictive covenant by marketing and selling the Rocket, a device using ESWT technology in violation of the GAINSWave™ Membership Agreement," [RJN, Ex. 5 at 45], causing "actual, irreparable harm" to SMDS. [RJN, Ex. 5 at 50]. Following extensive briefing and an

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*
NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

all-day evidentiary hearing, the court in the first-filed Florida allegation expressly rejected several of Novus's core allegations in this case.

For example, Novus alleged in the first-filed Florida action, as it alleges in this case, that SMDS's Membership Agreement is unenforceable because "SMDS's business information is not proprietary and it does not justify the broad protections ostensibly afforded" by its terms. [Doc. No. 1 at ¶ 78]; *accord* [*id.* at ¶¶ 31, 79] (alleging that "SMDS's marketing tools are comprised of nothing more than basic, commonly available information, and that the Membership Agreement's restrictive covenant "is so broad that nothing could justify it"). The court in the first-filed Florida action disagreed, however, holding "based on the evidence presented" at an all-day evidentiary hearing, that SMDS's "marketing techniques and training programs have economic value beyond the basic marketing principles derived from third-party sources," and that "the restrictive covenant in [SMDS's] Membership Agreement . . . is reasonably necessary to protect [those] legitimate business interests," and is "reasonably limited" in terms of its geographic and temporal scope. [RJN, Ex. 5 at 31, 43-44].

## III.   THE MOTION TO DISMISS SHOULD BE GRANTED

Novus's position in this lawsuit is not very different than a bank customer suing a hostage, but not the thief, for a robbery that occurred after the customer withdrew all of its funds from the bank. After all, Novus sues SMDS (the hostage) but not TRT (the thief), despite acknowledging that SMDS was the victim of TRT's "ruse" and forced to sign the allegedly anticompetitive Settlement Agreement to avoid the "existential threat of litigation that it could not afford to fight." [Doc. No. 1 at ¶ 66]. And, while Novus alleges that it was harmed by the supposedly anticompetitive Settlement Agreement by being forced to pay prices for SMDS's services, it had already agreed to pay $995 per month for SMDS's services in a Membership Agreement that the parties signed a year earlier.

For these reasons and others discussed below, it is glaringly obvious that this is

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*
NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

not a genuine lawsuit. Rather, it is merely Novus's misguided attempt to distract and retaliate against SMDS, stemming from the pending lawsuit in Florida between these two parties concerning the same subject matter. Novus's complaint must be dismissed.

## A.   *Dismissal Is Required Because Novus Failed to Name a Necessary and Indispensable Party*

According to Novus's complaint, the alleged anticompetitive scheme was initiated and spearheaded by Nonparty TRT, which owns an exclusive license to a patent relating to the use of ESWT to treat erectile dysfunction, but knows that its "patent is not valid or enforceable against most existing ESWT treatments." [Doc. No. 1 at ¶ 63]. Nevertheless, Novus alleges, Nonparty TRT "attempt[s] to monetize" the patent by initiating questionable enforcement actions that its victims are forced to settle to avoid crippling litigation.

SMDS—a company that sells a training and marketing program to physicians who want to advertise their ESWT therapy for erectile dysfunction to the public—found itself on the wrong end of one of TRT's patent enforcement actions. Because SMDS viewed "the action as an existential threat that it could not afford to fight," it "did not challenge [TRT's] patent," and instead was forced to enter a Settlement Agreement with TRT under duress. [Doc. No. 1 at ¶ 66]. Novus alleges that the Settlement Agreement "unlawfully restrict[s] competition," [Doc. No. 1 at ¶ 40], resulting in "supracompetitive prices for ESWT Programs." [Doc. No. 1 at ¶ 118]. Thus, "Novus requests that this Court" declare that the Settlement Agreement is "void" because it supposedly "violate[s] the Sherman Act." [Doc. No. 1 at 24-25, ¶ 3].

Because this lawsuit seeks to invalidate the Settlement Agreement between SMDS and Nonparty TRT, it cannot proceed in TRT's absence. *See* Fed. R. Civ. P. 12(b)(7). The Ninth Circuit has "reaffirm[ed] the fundamental principle [that] a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002); *accord Wilbur v. Locke*, 423 F.3d

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*
NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

1101, 1111-1114 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) (same). Or, to put it in more specific terms directly applicable to this case, an absent party is necessary to the litigation "[i]f a plaintiff's antitrust claims require a court to evaluate the conduct of [the] absent party that is alleged to be an antitrust co-conspirator with a defendant, thereby 'substantially implicating [the] interests' of that party." *In re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889, 899 (N.D. Cal. 2012). These fundamental principles of controlling law flow from the four factors that determine whether a party is "indispensable" under Federal Rule of Civil Procedure 19.

For example, as to the first and third indispensability factors, "a judgment rendered in [TRT's] absence" would be "prejudicial to . . . those already parties," and "a judgment rendered in [TRT's] absence will [not] be adequate" to afford complete relief to the existing parties. *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024 (9th Cir. 2002) (quoting Fed. R. Civ. P. 19(b)). Without TRT as a party in the litigation, Novus's request for a declaration to invalidate the Settlement Agreement would prejudice the parties by making it impossible to "effectively settle th[is] dispute[.]" *Coastal Comms. Serv., Inc. v. City of N.Y.*, 658 F. Supp. 2d 425, 451 (E.D.N.Y. 2009). TRT presumably "would not be bound by [a] declaration" entered in its absence "and could challenge the alleged illegality" of the Settlement Agreement "in another court, thus subjecting [SMDS] to inconsistent court-imposed obligations." *Id*. Without joining TRT in this litigation, this Court's Order could strip SMDS of its rights and obligations under the agreement, while TRT could "brandish its own court order" requiring SMDS to continue complying with its terms. *Id*. Indeed, the questions of whether the Settlement Agreement have been breached and, if so, which party is responsible for the breach are currently pending before the court in the Georgia action.

As to the second Rule 19(b) factor, it simply is not possible, "by protective provisions in the judgment, by the shaping of relief, or other measures," to "lessen[ ] or avoid[ ]" the prejudice that would result from TRT's continued absence in the

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

litigation. *Am. Greyhound*, 305 F.3d at 1024 (quoting Fed. R. Civ. P. 19(b)). This is not a case in which TRT and its Settlement Agreement can simply be severed from the remaining claims and issues, because the Settlement Agreement represents the crux of all the purported anticompetitive conduct at issue in this litigation. The Settlement Agreement is what supposedly "gives SMDS and TRT market power" while setting the terms of the alleged anti-trust conspiracy. [Doc. No. 1 at ¶ 41]. And the Settlement Agreement serves as the foundation for Plaintiff's entire complaint, which is organized in sections corresponding to the four supposedly "anticompetitive feature[s]" of the Settlement Agreement—namely, its so-called "unlawful market allocation agreement" component, [Doc. No. 1 at ¶¶ 45-49]; its "unlawful price fixing agreement" component, [Doc. No. 1 at ¶¶ 50-57]; its "agreement to assert sham patent infringement claims" component, [Doc. No. 1 at ¶¶ 58-75]; and its "agreement to block other competition" component. [Doc. No. 1 at ¶¶ 76-83]. To put it simply, the Settlement Agreement between SMDS and TRT "is central to this litigation," foreclosing any effective "ameliorative measures." *Am. Greyhound*, 305 F.3d at 1025.

As to the fourth and final factor, Novus "will have an adequate remedy if the action is dismissed for nonjoinder." *Am. Greyhound*, 305 F.3d at 1024 (quoting Fed. R. Civ. P. 19(b)). All of the parties—Novus, SMDS, and TRT—are already deeply entrenched in litigation against each other in the Southern District of Florida and the Northern District of Georgia. The two parties named in this case—Novus and SMDS—are adversaries in a pending action in the Southern District of Florida involving the same business relationship, the same agreements, and virtually all of the same factually disputed issues. Meanwhile, the two alleged co-conspirators—SMDS and TRT—are adversaries in a pending action in the Northern District of Georgia, where they have accused each other of breaching the same Settlement Agreement that Novus seeks to invalidate as an unlawful anti-trust arrangement in this case. *See* [RJN, Ex. 2 at 12] (TRT alleging that SMDS breached the Settlement Agreement); [RJN, Ex. 2 at 39] (SMDS alleging that TRT breached the Settlement Agreement).

*PRINTED ON RECYCLED PAPER*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

Novus's refusal to join TRT as an indispensable party in this case (or in an alternate forum that can exercise jurisdiction over all parties at once) all but proves its improper ulterior purpose to distract and retaliate in response to the Florida litigation by naming SMDS—and *only* SMDS—as the sole defendant a sprawling, putative class-action conspiracy in a different court on the other side of the country.

### B.   *Dismissal is Required Because Novus Failed to Allege Any Damages*

Novus's complaint is also subject to dismissal because Novus fails to allege that it suffered any damages, which precludes it from establishing the "causation" and "harm" elements of its claims, and which deprives it of standing to bring this anti-trust action against SMDS. *See* Fed. R. Civ. P. 12(b)(6).

On October 5, 2017, Novus's President signed SMDS's standard Membership Agreement, which established the prices for the training and marketing services at issue in this case. [RJN, Ex. 1]. Novus agreed to pay $995 per month to join SMDS's training and marketing program, [RJN, Ex. 1 at ¶ 1], while acknowledging in writing that the proprietary and trade secret materials available to it as a member were "develop[ed,] create[d,]" and "establish[ed]" through SMDS's "substantial[ ]" "invest[ment]" in creating the program, and that the intellectual property, goodwill, and business relationships that Novus was paying to access had "substantial competitive value" because it would be "difficult and costly for [Novus] to learn, develop, and use [them] independently." [RJN, Ex. 1 at ¶ 6].

In September 2018, nearly one year after Novus agreed to join SMDS's program at a cost of $995 per month, Novus alleges that SMDS was forced to sign an anticompetitive Settlement Agreement with TRT to avoid the "existential threat" of litigation "that it could not afford to fight." [Doc. No. 1 at ¶¶ 40, 66].

Although Novus alleges that the Settlement Agreement created an anticompetitive arrangement allowing SMDS to charge "supracompetitive prices" for its services, Novus does not dispute that it had already agreed to pay $995 per month for SMDS's services one year earlier, long *before* the alleged conspiracy was formed.

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*
NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

*Compare* [RJN, Ex. 1 at ¶ 1] (Novus agreeing to "pay SMDS monthly membership dues of nine hundred and ninety-five dollars ($995)" for SMDS's program in October 2017) *with* [Doc. No. 1 at ¶¶ 40, 118] (Novus alleging "paid and will continue to pay supracompetitive prices for ESWT Programs" as "a direct, proximate, and foreseeable result of the" Settlement Agreement signed in September 2018). Novus does not allege that it was ever asked to pay—or that it did pay—higher prices for SMDS's services at any time after the alleged formation of the purported anti-trust conspiracy memorialized in the Settlement Agreement between SMDS and TRT.

Accordingly, Novus cannot allege that the conspiracy was the legal or proximate cause of its injury or, indeed, that it suffered any injury at all. Having failed to allege "causation" or the existence of any "damages" arising *after* SMDS's allegedly wrongful conduct, Novus has not pled a claim upon which relief can be granted as a matter of law. *See Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000) ("[Defendant] cannot incur supervisory liability for conduct that occurred before he became a[ ] supervisor."). Novus's pleading deficiencies are even more pronounced in the anti-trust context, where it bears a heightened obligation to plead and prove that its "alleged injury is . . . 'inextricably intertwined' with the alleged anticompetitive conduct." *Banxcorp v. Apax Partners, L.P.*, 2011 WL 1253892, at *7 (D.N.J. Mar. 28, 2011) (cleaned up) (granting motion to dismiss where the defendant's "subsequent" anti-competitive conduct "did not have any effect" resulting in the plaintiff's injury). Because Novus did not suffer any damages as a result of the imagined conspiracy, it cannot "establish antitrust standing" as a matter of law. *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 911 (N.D. Cal. 2019) (quoting *Cargill, Inc. v. Monfort of Colorado Inc.*, 479 U.S. 104, 110 n.5 (1986)). Or, to put it another way, the price that Novus agreed to pay for SMDS's services in October 2017 could not possibly have "be[en] the result of [the allegedly] unlawful conduct" that began when SMDS purportedly formed an anti-trust conspiracy with TRT one year later, in

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

18

September 2018. *Id.* (citing *Feitelson v. Google, Inc.*, 80 F. Supp. 3d 1019, 1027 (N.D. Cal. 2015)).

Novus's allegations are all the more absurd considering that SMDS and TRT, the alleged co-conspirators, are in fact adversaries in pending litigation where each party has accused the other of breaching the Settlement Agreement that the complaint attempts to characterize as the conspiratorial agreement.

Far from reflecting an ongoing and active conspiracy, TRT admitted within a week of signing the Settlement Agreement that it had no intention of honoring its side of the agreement, causing SMDS to terminate the agreement, culminating in a lawsuit and countersuit between the alleged co-conspirators. [RJN, Ex. 2]. Given the absence of any plausible agreement or cooperation among the purported co-conspirators, Novus has "not nudged [its] claims" of an actionable conspiracy "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord id.* at 558-60 (observing that, in light of the "unusually high" costs "of modern federal antitrust litigation," courts must "tak[e] care to . . . avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support" an anti-trust claim). As one federal court remarked, it "is not aware of and has been unable to locate a cause of action for attempted civil conspiracy." *Engineered Framing Sys., Inc. v. Vescom Structures, Inc.*, 2005 WL 8174971, at *5 (D. N.J. Nov. 1, 2005).

### C. Dismissal (or at Least a Transfer) Is Required Because this Action Substantially Overlaps with the First-Filed Florida Action

Because a case "involving the same parties and issues" has already been filed and remains pending in the Southern District of Florida, this Court exercises "an 'ample degree of discretion' in determining whether to dismiss [this] case based on the first-to-file rule," which "should not be disregarded lightly." *MeridianLink, Inc. v. DH Holdings, LLC*, 2010 WL 11512182, at *2 (C.D. Cal. June 16, 2010); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir 1982). Each of the three

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*
NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

1   factors in the first-to-file analysis weigh heavily in favor of dismissal, or—as a far

2   lesser alternative—a transfer to the United States District Court for the Southern

3   District of Florida.

4          The first factor—the "chronology of the lawsuits"—indisputably counsels in

5   favor of applying first-to-file rule. *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,

6   787 F.3d 1237, 1240 (9th Cir. 2015); *accord Wallerstein v. Dole Fresh Vegetables,*

7   *Inc.*, 967 F. Supp. 2d 1289, 1295 (N.D. Cal. 2013). On January 23, 2020, SMDS

8   initiated a lawsuit against Novus in Florida state court, which was removed to the

9   Southern District of Florida approximately one month later. *See* [Ex. 3, Doc.

10  Nos. 1-2]. The first-filed Florida action has already been the subject of extensive

11  proceedings, including over 150 individual docket entries, as well as eight separate

12  hearings, including an all-day evidentiary hearing culminating in a 58-page Order

13  granting SMDS' motion for a preliminary injunction against Novus, which is the

14  subject of a putative interlocutory appeal. *See* [RJN, Ex. 3], Doc. Nos. 7, 38, 40, 60,

15  72, 107, 136, 146 (minute entries for hearings); [RJN, Ex. 3], Doc. Nos. 125, 126

16  (orders granting injunctive relief); [RJN, Ex. 3], Doc. Nos. 142 (notice of interlocutory

17  appeal)). Meanwhile, this action was not filed until April 3, 2020.

18         The second factor—the "similarity of the parties"—also militates in favor of

19  applying the first-to-file rule. *Kohn Law Grp.,* 787 F.3d at 1240. The parties involved

20  in both cases are identical: SMDS filed suit against Novus in the Florida action, and

21  Novus filed suit against SMDS here. The presence of any ancillary parties (including

22  Novus's agents and other related parties in the first-filed Florida action or the putative

23  class members in this case) does not frustrate application of the first-to-file rule, which

24  "requires only *substantial similarity* of parties." *Kohn*, 787 F.3d at 1240 (internal

25  citations omitted; emphasis added); *accord Pac. Coast Breaker, Inc. v. Conn. Electric,*

26  *Inc.*, 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) ("The [first-to-file] rule is

27  satisfied if some [of] the parties in one matter are also in the other matter, regardless

28  of whether there are additional, unmatched parties in one or both matters.") (citations

omitted); *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006); *Schwartz v. Frito-Lay N. Am.*, 2012 WL 8147135, at *3 (N.D. Cal. Sept. 12, 2012) (concluding that the parties were effectively the same where the putative class in the earlier filed case would include named plaintiff in later filed case).

The third and final factor—the "similarity of the issues"—likewise favors application of the first-to-file rule. *Kohn Law Grp.,* 787 F.3d at 1240. Dismissal is appropriate because the disputed issues in the two cases substantively overlap, even if they are not "absolutely identical." *Gerin v. Aegon USA, Inc.*, 2007 WL 1033472, at *4 (N.D. Cal. 2007); *accord Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) ("[I]t is enough if the two proceedings are substantially similar."). The sameness inquiry "focuses on the facts and issues raised in the actions, not on the specific claims pled," *Kennedy v. Full Tilt Poker*, 2012 WL 13071634, at *9 (C.D. Cal. Aug. 24, 2012), and the first-to-file rule should apply even if claims in the later-filed action differ from the first-filed action. *Barzrganian v. Mercedes-Benz USA, LLC*, 2017 WL 4990517, at *3 (C.D. Cal. Oct. 31, 2017); *MeridianLink, Inc. v. DH Holdings, LLC*, 2010 WL 11512182, at *3 (C.D. Cal. June 16, 2010) ("additional claims…do [ ] not render the two cases dissimilar.").

The first-filed Florida action primarily alleges that Novus is liable for breaching the Membership Agreement between the parties. And in this case, Novus asks the Court to "[e]njoin SMDS from continuing its unlawful acts," and to invalidate the Membership Agreement, [Doc. No. 1 at 24-25, ¶¶ 3-4, 7], because it supposedly "increased [SMDS's] market power," [Doc. No. 1 at ¶ 42], operated to "block competition," [Doc. No. 1 at ¶ 76], and "injured" "competition" in the market, [Doc. No. 1 at ¶ 123]. It is thus no surprise that this case and the first-filed Florida action both implicate the same factual and legal issues necessary for their resolution.

To take just one example, Novus alleges in this case that SMDS's marketing training comprises "nothing more than basic, commonly-available information," [Doc. No. 1 at ¶ 31], just as it alleged in the first-filed Florida action that SMDS's

"marketing training comprised [of] nothing more than generic sales training, including the use of a sales script and general techniques well known in the [ ] marketing industry." [RJN, Ex. 4 at 7]. Likewise, Novus alleges in this case that SMDS's Membership Agreement is unenforceable because its restrictive covenant is "so broad that nothing could justify it," [Doc. No. 1 at ¶ 79], just as it alleged in the first-filed Florida action that "it is clear the restrictive covenant is too broad" to be enforced. [RJN, Ex. 4 at 17]. In granting SMDS's preliminary injunction against Novus, however, the court in the first-filed Florida action rejected Novus's arguments, expressly holding in a 58-page Order "based on the evidence presented" at an all-day evidentiary hearing that (a) SMDS's "marketing techniques and training programs have economic value beyond the basic marketing principles and techniques derived from third-party sources," and (b) "the restrictive covenant in [SMDS's] Membership Agreement . . . is reasonably necessary to protect [SMDS's] legitimate business interests," and "reasonably limited" in terms of its geographic and temporal scope. [RJN, Ex. 5 at 43-44].

Similar examples of core overlapping issues abound. For instance, in both cases, Novus claims that the relief it seeks serves the interests of SMDS's customers. *Compare, e.g.*, *Florida Action*, [RJN, Ex. 3] Doc. No. 69 at  18 (Novus alleging that SMDS is "participating in a scheme to defraud its own customers by charging for a license" for an unenforceable patent), *with, e.g.*, [Doc. No. 1 at ¶ 69] (Novus similarly alleging that SMDS "advanced [an] anticompetitive scheme to target . . . customers with baseless patent infringement claims"). And, in both cases, Novus claims that the relief it seeks serves the interests of SMDS's competitors. *Compare, e.g.*, *Florida Action*, [RJN, Ex. 3] Doc No. 69 at 9 (Novus alleging that SMDS is attempting to "stifle competition from a disruptive technology in a new market"), *with, e.g.*, [Doc. No. 1 at ¶ 44] (Novus similarly alleging that SMDS is attempting to "keep any potential competition from entering or succeeding in the market"). The substantial overlap between the two cases will unquestionably squander the scarce judicial

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

resources of this Court and the Florida court by requiring duplicative adjudication of the same issues, and raises the persistent risk that the parties will be subjected to conflicting and inconsistent rulings.

As an alternative to dismissal, this Court may also transfer the case, because the complaint could have been asserted in the Southern District of Florida, and a transfer to the jurisdiction where the first-filed action remains pending would serve "the convenience of the parties" and "the interest of justice." *See* 28 U.S.C. § 1404(a).

First, a transfer would be an acceptable alternative to dismissal because this case initially "might have been brought" in the Southern District of Florida, which can exercise jurisdiction over the parties and the claims and it is the appropriate venue. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 834 (N.D. Cal. 2018). SMDS is a "Florida limited liability company with its principal place of business in Miami-Dade County, Florida," [Doc. No. 1 at ¶ 7], making it subject to the general jurisdiction of Florida's courts. *See* Fla. Stat. § 48.193(2) (allowing exercise of jurisdiction over defendant "engaged in substantial and not isolated activity within [the] state."); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction."). For the same reason, venue is proper in the Southern District of Florida. *See Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1178 (9th Cir. 2004) (holding that venue is proper in a federal antitrust suit "if the venue requirements of either Section 12 or 28 U.S.C. § 1391 are satisfied"); 28 U.S.C. § 1391(b) (providing that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located").[2]

---

[2] The Clayton Act provides that "[a]ny suit or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district where it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. And, where state law claims "arise[ ]

*PRINTED ON RECYCLED PAPER*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

Second, a transfer may be an acceptable alternative to dismissal based on the non-exhaustive list of case-specific factors that the Court "may consider" as part of its analysis. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000). "Section 1404(a) is intended to place discretion in the district court" under a "flexible and individualized analysis [that] encompasses consideration of the parties' private expression of their venue preferences." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). While most of those factors are neutral—e.g., the differences in the costs of litigation in the two forums; the availability of compulsory process to compel attendance of unwilling non-party witnesses; the ease of access to sources of proof; and the relevant public policy of the forum state—Novus seeks to certify a class consisting of SMDS's customers and to invalidate SMDS's standard Membership Agreement as to all members of the class. Given that SMDS is a Florida resident, given that its Membership Agreement provides that it shall be "governed and construed in accordance with the laws of the State of Florida," and given that the Membership Agreement also provides that "[e]ach party waives any objection or defense based on venue, personal jurisdiction, or that the forum is not convenient," [Ex. 1 at ¶ 8], Florida is clearly the most fitting forum for any class action litigation attempting to eviscerate the Membership Agreement between SMDS and a putative class of plaintiffs comprising its customers.

## IV.   CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss should be granted, and the Complaint should be dismissed without leave to amend.  In the alternative, and only in the event the Complaint is not dismissed, the entire action

---

out of a common nucleus of operative facts," *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004), "it is within the court's discretion to exercise pendent personal jurisdiction" over the remaining state law claims. *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 784 (N.D. Tex. 2008). *See generally Action Embroidery*, 368 F.3d at 1180-81 (describing pendent personal jurisdiction as being commonly applied when "one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction").

*PRINTED ON RECYCLED PAPER*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

should be transferred to the United States District Court for the Southern District of Florida.

Respectfully submitted,

DATED:  May 22, 2020          HAMBURG, KARIC, EDWARDS & MARTIN LLP

By____//s// Steven S. Karic_____
STEVEN S. KARIC

Attorneys for Defendant
SEXUAL MD SOLUTIONS, LLC

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

*PRINTED ON RECYCLED PAPER*
NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

### DECLARATION OF STEVEN S. KARIC

I, STEVEN S. KARIC, declare:

1.     I am an attorney licensed and admitted to practice law in the State of California and before this Court, and am also a member of Hamburg, Karic, Edwards & Martin LLP, attorneys of record for defendant Sexual MD Solutions, LLC (SMDS) in the above-entitled action.  I have been a business litigator and trial lawyer since 1982, when I was first admitted to practice in the Commonwealth of Pennsylvania and since 1985, when I was first admitted to practice law in this State.

2.     I make this Declaration in support of SMDS's Motion to Dismiss the above-entitled action.  I have personal knowledge of the matters stated in this Declaration and, if called as a witness, could and would testify competently to these matters.

3.     On May 20, 2020, I was engaged to represent SMDS in this action, serving primarily as "local counsel" to SMDS's Florida counsel, who are not admitted to practice before this Court.  I immediately contacted counsel for plaintiff, Jon Cieslak, seeking a seven day extension of time, up to and including May 29, 2020, within which to respond to the Complaint.  This extension, if granted, would not have extended the time for more than 30 days from the date the response to the initial Complaint would have been due.  This extension would also have enabled counsel for both parties to meet and confer about SMDS's intended Motion to Dismiss the Complaint in accordance with Local Rule 7-3.

4.     To my surprise, Mr. Cieslak refused to extend the professional courtesy of granting me this seven day extension of time, even after I explained to him that I had just been engaged, that I was working remotely as a result of the State of California and County of Los Angeles "stay at home" Orders issued to stop the spread of COVID-19, and that I needed this brief extension of time to meet and confer with him and Florida counsel in accordance with Local Rule 7-3, so we could file SMDS's Motion to Dismiss in accordance with this Court's Local Rules.  In declining this

*PRINTED ON RECYCLED PAPER*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

routine request for professional courtesy, Mr. Cieslak claimed that granting the request "would prejudice his client."

5.     Nevertheless, Mr. Cieslak agreed to meet and confer with me and Florida counsel by telephone on May 22, 2020.   During the course of this meeting and conference, Florida counsel and I explained the substance of the Motion to Dismiss we intended to file, with the intent of trying to resolve it.   Mr. Cieslak stated that he was not prepared to address that substance as it was the first time he had been made aware of it.

6.     I then reiterated my request that he grant SMDS the seven day extension of time, up to and including May 29, 2020, within which to respond to the Complaint, and to enable us to try to resolve the Motion without having to file it.   I also asked Mr. Cieslak how his client would be "prejudiced" by granting me the professional courtesy of a seven day extension of time I had requested.   I was shocked by the explanation Mr. Cieslak gave me:   If he granted the seven day extension of time, his client would lose the ability to argue that SMDS filed the Motion to Dismiss without meeting and conferring seven days before doing so, in accordance with Local Rule 7-3.   Such tactics should not be sanctioned, especially in these COVID-19 pandemic times.

7.     Finally, I apologize to the Court for filing SMDS's Motion to Dismiss on the same day that I met and conferred with opposing counsel.   Unfortunately, as explained above and having been engaged only two days earlier, I was left with no choice but to do so or risk SMDS having plaintiff's counsel request the entry of default against SMDS, which I have no doubt Mr. Cieslak would have done.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on May 22, 2020.

_____
//s// Steven S. Karic
STEVEN S. KARIC

*PRINTED ON RECYCLED PAPER*

NOTICE OF MOTION AND MOTION TO DISMISS; MEMO OF POINTS AND AURTHORITIES; KARIC DEC

HAMBURG, KARIC, EDWARDS & MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067-4409

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1900 Avenue of the Stars, Suite 1800, Los Angeles, California 90067-4409.

On May 22, 2020, I served the foregoing document described as NOTICE OF MOTION AND MOTION OF DEFENDANT SEXUAL MD SOLUTIONS, LLC TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF STEVEN S. KARIC on the interest parties in this action as follows:

**(By Electronic Transfer to the CM/ECF System)** In accordance with Federal Rule of Civil Procedure 5(d)(3) and Local Rule 5-1, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed document(s) to the United States District Court Southern District of California's Case Management and Electronic Case Filing (CM/ECF) system on this date. It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system. The transmission was reported as complete and without error.

Executed on May 22, 2020, at Los Angeles, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction this service was made.

| | |
|---|---|
| Valery Ballesteros | //s// Valery Ballesteros |
| Name | Signature |